UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KRISTI LYNN BICCUM, an Individual; T.B., J.B.,
J.B., and B.B., minor children by and through
Their Mother and Father, and Natural Guardians,
KRISTI LYNN BICCUM, and JAMES BICCUM;
and JAMES BICCUM, an Individual,

                Plaintiffs

      -v-                                        7:16-CV-645

CITY OF WATERTOWN, NEW YORK;
WATERTOWN, NEW YORK POLICE
DEPARTMENT; CHARLES DONOGHUE, in
his capacity as Chief of Police of the Watertown
Police Department and as an individual;
DETECTIVE SEAN P. BOYLE, in his capacity
as an employee of the Watertown Police
Department and as an Individual; JOHN DOE
#1, in his/her capacity as an employee of the
Watertown Police Department and as an
Individual; and MOLLY DEJOURDAN, an
Individual,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

DOMBROW LAW FIRM                   RUSSELL W. DOMBROW, ESQ.
Attorneys for Plaintiffs
499 S. Warren Street, Suite 220
Syracuse, NY 13202

BOND, SCHOENECK & KING, PLLC     JONATHAN B. FELLOWS, ESQ.
Attorneys for Defendants
One Lincoln Center
Syracuse, NY 13202

MOLLY DEJOURDAN
Defendant *pro se*
619 Thompson Street
Watertown, NY 13601

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION and ORDER**

I. **INTRODUCTION**

On June 6, 2016, plaintiffs Kristi Lynn Biccum ("Biccum" or "plaintiff")[1], her husband James Biccum, and their children T.B., J.B., J.B., and B.B., brought this complaint under 42 U.S.C. § 1983 ("§ 1983") alleging violation of their First, Fourth, Fifth, and Fourteenth Amendment rights by defendants Detective Sean P. Boyle ("Boyle"), Watertown Police Department's Chief of Police Charles Donoghue ("Donoghue"), and an unnamed Watertown police officer ("Doe"). Plaintiffs also brought these claims against the City of Watertown ("the city") and the Watertown, New York Police Department ("the department") under § 1983 through *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ("*Monell* claims").

The Biccum family also asserts violations of its members' rights under Article I, § 12 of the New York State Constitution, as well as claims under New York State Common Law for: (1) Malicious Prosecution—against the police officer defendants directly and against the city and the department through *respondeat superior*—; (2) Negligence; and (3) Negligent Training, Supervision, and Retention. Additionally, plaintiffs allege against only Boyle and defendant Molly Dejourdan ("Dejourdan"): (1) Negligence; (2) Intentional Infliction of Emotional Distress; and (3) Negligent Infliction of Emotional Distress, (together, "the state claims").

On January 10, 2018, defendants moved for summary judgment under Federal Rule of Civil Procedure ("Rule") 56, and for an award of attorney's fees under 42 U.S.C. § 1988(b) ("§ 1988"). On February 6, 2018, plaintiffs filed a cross-motion to amend the complaint under Rule 15, and in opposition to defendants' Rule 56 motion.

---

[1] Although there are several plaintiffs and people with the surname Biccum involved in this case, this plaintiff alone had an active role in its underlying facts. Thus, for simplicity's sake, references to Biccum or plaintiff in the singular refer only to her.

## II.    BACKGROUND

At all times relevant to this action, Marcia Dejourdan ("the victim") held an account at Northern Federal Credit Union ("NFCU").  Dkt. 45-3 ("Boyle Dec."), ¶ 3.  On October 30, 2014, a woman claiming to be the victim called NFCU asking to add Biccum to her account.  Dkt. 45-4, p. 2.[2]  On October 31, 2014, NFCU added plaintiff to the account, and sent her a debit card in her name.  *Id.*  A credit union employee thought adding plaintiff was a mistake, however, because she knew the Dejourdan family, and knew that the victim was still hospitalized after suffering a severe stroke.  *Id.* at 3.

On November 14, 2014, NFCU shut down the victim's account to investigate.  Dkt. 45-4, p. 3.  Although they contacted the woman who had called to add Biccum's name to the account, she claimed that she could not come to the credit union to sign any paperwork because she was in a physical rehabilitation facility.  *Id.*  The credit union's calls to the number provided for plaintiff went unanswered.  *Id.*  Upon review of the victim's account records, the credit union determined that $5,329.42 had been spent from the account "all over the area."  *Id.*

NFCU called the police on November 19, 2014.  Dkt. 45-4, p. 2.  A Detective Lamica began the investigation by interviewing Biccum at the credit union when she arrived to sign paperwork.  Boyle Dec. ¶ 4, Dkt. 45-5, p. 2.  Plaintiff's story was that she had been given power of attorney over the victim because her stroke had rendered her incapable of caring for her own affairs.  Dkt. 45-5, p. 2.  The detective determined that she "did not appear to be truthful."  *Id.*

---

[2] Pagination corresponds with CM/ECF.

3

Lamica followed up on the interview by speaking with the attorney who prepared the form granting Biccum power of attorney over the victim. Dkt. 45-5, p. 2. An unknown person had called the attorney's partner seeking to establish power of attorney for the victim. *Id.* Responding to that phone call, the attorney met plaintiff at the rehabilitation center where the victim was recovering. *Id.* Plaintiff then woke the victim. *Id.* The victim appeared irate, but plaintiff explained that the attorney was there to grant plaintiff power of attorney over her. *Id.* At first, the victim pushed the attorney's hand away. *Id.* Eventually, however, she signed the power of attorney form. *Id.* On January 29, 2015, the victim signed an affidavit of non-permission, stating that plaintiff unlawfully took money from her account. Dkt. 45-6, p. 2.

Boyle subsequently took over the investigation. Boyle Dec. ¶ 6. After conducting another interview with the victim and two more with Biccum, he decided to charge her for her use of the account. *Id.* ¶¶ 6-9. On April 29, 2015, plaintiff voluntarily surrendered at the department. *Id.* ¶ 10. The detective filed a criminal complaint against her that same day, alleging Grand Larceny in the fourth degree. Dkt. 45-10, p. 2.

Several weeks after the arrest, the victim requested Biccum's arrest report from Boyle, so that she could substantiate an insurance claim for the stolen funds. Boyle Dec. ¶ 11. The detective personally delivered the report to her. *Id.* Although he declared that he gave the report directly to the victim—and not her daughter, defendant Dejourdan—the victim's daughter herself stated that she received the report either from him or Lamica. *Compare id.*, *with* Dkt. 49-5, p. 5. The arrest report contained plaintiff's unredacted social security number. *See* Dkt. 45-11, p. 2.

Dejourdan then posted the arrest report on Facebook. Dkt. 49-4, p. 2. Although she claimed that she deliberately did not post the social security number, "in the picture you can clearly see that she in fact did post the address, phone number, and social security number."

4

*Compare id., with* Dkt. 49-5, p. 4. She also expressed a hope that "maybe some scumbag like [Biccum] will steal her identity like she did" to the victim. Dkt. 49-4, p. 2.

On September 19, 2015, Biccum affirms that Boyle harassed her and her family during the months after her arrest. Dkt. 49-3 ("Biccum Dec."), ¶ 17, 23-24, 26. As part of his harassment, she states that on April 20, 2016, he "screamed" to her from his vehicle that she "might want to take a plea deal." *Id.* ¶ 26. The detective disputes these allegations. Dkt. 45-3, ¶ 14.

On June 6, 2016, Biccum filed the present complaint. Dkt. 1. On September 29, 2016, she pled guilty to one count of petty larceny. Dkt. 45-12, p. 2. On November 15, 2016, plaintiffs' attorney stated that he "anticipate[d] withdrawing the false arrest and malicious prosecution claims" as a result of her guilty plea. Text Entry dated November 15, 2016. On January 19, 2017, because plaintiffs had failed to stipulate to the dismissal of the malicious prosecution and false arrest claims, United States Magistrate Judge Andrew T. Baxter ordered that they had one week to so stipulate or to provide a status report. Dkt. 19.

On January 26, 2017, plaintiffs explained that they had submitted a proposed stipulation to defendants, but that defendants had failed to respond. Dkt. 20. Plaintiffs had sent defendants that proposed stipulation on January 23, 2017, four days after Magistrate Judge Baxter's order, and three days before the deadline that order imposed. Dkt. 19; 20. Defendants replied that the stipulation was unacceptable because it was unclear as to which claims would survive, and because it only dismissed the claims without prejudice. Dkt. 22, pp. 1-2; Dkt. 22-1, pp. 1-2.

On March 29, 2017, Magistrate Judge Baxter granted plaintiffs until April 20, 2017 to file an amended complaint, removing the claims of malicious prosecution and false arrest, and advancing what claims remained. Dkt. 28. Plaintiffs requested and were granted a

5

one-week extension, such that they could file an amended complaint on April 27, 2017. Dkt. 29; 30. Plaintiffs nevertheless failed to amend their complaint. Dkt. 31.

On January 10, 2018, defendants moved for summary judgment. Dkt. 45. On February 6, 2018, plaintiffs filed a cross-motion to amend the complaint and in opposition to the motion for summary judgment. Dkt. 49. The motions having been fully briefed, they will now be considered on the parties' submissions without oral argument.

### III.     **LEGAL STANDARD**

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Good*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id.* at 273.

The nonmoving party must do more than "rest upon the mere allegations . . . of [the plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Instead, a dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

**IV. DISCUSSION**

Defendants advance three arguments in support of their motion for summary judgment: (1) Biccum's claims for false arrest and malicious prosecution are foreclosed by her guilty plea; (2) the Second Circuit has ruled that there is no § 1983 claim available for disclosure of a plaintiff's social security number; and (3) because plaintiffs' § 1983 claims cannot survive summary judgment, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims. In addition, defendants have moved to be awarded attorney's fees under § 1988 because plaintiffs admitted that their § 1983 claims for false arrest and malicious prosecution were invalid in November of 2016, yet they have only now, after the close of discovery, agreed to dismissal of those claims with prejudice.

Plaintiffs argue that they should be permitted to amend their complaint to dismiss the false arrest and malicious prosecution allegations, but to focus on their claims of a violation of the right to privacy. They also oppose defendants' motion to allocate fees.[3]

**A. SECTION 1983 MALICIOUS PROSECUTION AND FALSE ARREST.**

Plaintiffs agree that their claims of malicious prosecution and false arrest must be dismissed with prejudice. For this reason alone, the claims merit dismissal.

Even if plaintiffs were of a mind to argue the point, however, the claims still would be meritless. As to plaintiffs' malicious prosecution claims, plaintiff would have to prove: "(1) the initiation or continuation of a criminal proceeding against plaintiffs; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and

---

[3] To the extent that plaintiffs argue that defendants merit sanctions for failing to properly protect the name and privacy of the minor plaintiffs, defendants appear to have corrected the issue, or else this Court fails to see any of the complained confidentiality violations. *See* Dkt. 45-18, pp. 10-11. In any event, plaintiffs themselves have failed to fully redact their own submissions. *See* Dkt. 49-5, p. 5. The parties should consider this an object lesson in the importance of care in scrutinizing their submissions to protect the privacy of vulnerable parties. Neither, thus, will be sanctioned.

(4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citing *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)).

Biccum pled guilty to petty larceny, and therefore cannot prove a termination in her favor, as plaintiffs admitted on November 15, 2016. Text Entry dated Nov. 15, 2016; *see, e.g., Cantey v. Martinez*, 2018 WL 2727868, at *6-7 (N.D.N.Y. June 6, 2018) (ruling that guilty plea for one offense of multi-count charge precluded plaintiff from arguing termination in plaintiff's favor).

Similarly, to establish their false arrest claim, plaintiffs must prove that: "(1) the defendant intended to confine [her;] (2) the plaintiff was conscious of the confinement[;] (3) the plaintiff did not consent to the confinement[;] and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003). A police officer is privileged to arrest a plaintiff if probable cause existed for the arrest. *Id.* at 135. A guilty plea establishes probable cause for the arrest as a matter of law. *Parker v. Robenski¸* 2015 WL 4041734, at *4 (N.D.N.Y. July 1, 2015) (citing *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 376 (E.D.N.Y. 2013)).

Biccum's guilty plea to petty larceny establishes that probable cause existed and forecloses her ability to prove that the arrest was not otherwise privileged, and thus her claim for false arrest under § 1983 could not survive summary judgment. These claims must therefore be dismissed.

### B. **INVASION OF PRIVACY UNDER § 1983 AND THE PRIVACY ACT.**

Plaintiffs' only remaining claim sounding in federal law from their original complaint is for invasion of privacy under § 1983. There is no constitutional right to privacy in a person's social security number. *Cassano v. Carb*, 436 F.3d 74, 75 (2d Cir. 2006). Courts in this Circuit have declined to find a right to privacy in social security numbers because social

8

security numbers do not constitute "highly personal" information. *Pennyfeather v. Tessler*, 431 F.3d 54, 56 (2d Cir. 2005). Disclosure of a social security number is therefore not subject to an invasion of privacy cause of action under § 1983. *Id.* Additionally, "disclosure of legal documents, whether it be charging documents, convictions, case law, legislation, or other legal research, is not a violation of privacy because the documents are all a matter of public record." *Franklin v. Chenango Cty. Sheriff's Office*, 2018 WL 4344942, at *6 (N.D.N.Y. Sept. 11, 2018) (citing *Davis v. Chapple*, 2009 WL 6312502, at *9 n.9 (N.D.N.Y. Nov. 4, 2009) (internal citations omitted), *adopted by* 2010 WL 985763 (N.D.N.Y. Mar. 16, 2010)).

Plaintiffs' invasion of privacy claims are foreclosed by the rulings of this Circuit. First, the Second Circuit has twice held that there is no constitutional right to privacy in a plaintiff's social security number. *Cassano*, 436 F.3d at 75 ("We . . . agree with the District Court's conclusion that the Constitution does not provide a right to privacy in one's [social security number]."); *Pennyfeather*, 431 F.3d at 56 (upholding denial of plaintiff's § 1983 claim for violation of privacy for disclosure of social security number because social security numbers are not "highly personal").

Plaintiff correctly notes, however, that this case does not involve compelling an employee to disclose their social security number or a social security number's disclosure in a public hearing, as were the facts in *Cassano*, 436 F.3d 74, and *Pennyfeather*, 431 F.3d 54, respectively. But the different contexts presented by *Pennyfeather* and *Cassano* do not diminish their holdings. Plaintiffs claim that Boyle's disclosure of her social security number constituted a violation of her constitutional right to privacy, *Cassano* states in no uncertain terms that such a right to privacy does not exist. 436 F.3d at 75. Plaintiff claims that her social security number is a highly personal piece of information meriting protection under

§ 1983, *Pennyfeather* holds that it is not. 431 F.3d at 56. Accordingly, plaintiff cannot attain relief under § 1983 for Boyle's disclosure of her social security number.

Second, Boyle only disclosed a legal document, which cannot support plaintiff's claim for an invasion of privacy. Plaintiff's arrest records are a matter of the public record, and therefore the detective's disclosure of those records to Dejourdan cannot amount to a violation of privacy. *See, e.g.*, *Paul P. v. Verniero*, 170 F.3d 396, 403 (3d Cir. 1999) (ruling that "arrest records and related information are not protected by a right to privacy"); *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) (ruling that sheriff's alleged disclosure of plaintiff's arrest record to third party did not give rise to federal constitutional claim because "arrest and conviction information are matters of public record"); *Swift v. Tweddell*, 582 F Supp. 2d 437, 447 (W.D.N.Y. 2008) (noting that disclosure of charged crime did not violate right to privacy).

Thus, plaintiffs cannot prove that Boyle's disclosure of Biccum's arrest report to Dejourdan violated her right to privacy to sustain a § 1983 claim. Thus, this claim must be dismissed.[4] *See, e.g.*, *Miller v. Annucci*, 2019 WL 2370295, at *12 (N.D.N.Y. June 5, 2019) (citing *Pennyfeather*, 431 F.3d at 56) (dismissing § 1983 claim for invasion of privacy for disclosing court documents containing social security number in part because "[t]he contention that disclosure of one's social security account number violates the right to privacy has been consistently rejected").

### C. **PLAINTIFFS' PROPOSED AMENDED COMPLAINT.**

In support of their cross-motion to amend the complaint under Rule 15(a)(2), plaintiffs have submitted a proposed amended complaint, alleging new causes of action targeting plaintiffs' invasion of privacy claims. Dkt. 49-2. Plaintiffs seek to add federal claims against

---

[4] Because plaintiff cannot prove any violation of her rights under § 1983, the *Monell* claims fail for the same reasons and must be dismissed.

defendants Boyle and the city for: (1) violation of the Privacy Act of 1974; and (2) violation of 42 U.S.C. § 405(c)(2)(C)(viii)(I)[5] ("§ 405(c)(2)(C)(viii)(I)").

Under Rule 15(a)(2), a party may amend its pleading with the court's leave. A court should freely give leave when justice requires it. *Id.* However, when leave to amend would be futile, courts may properly deny the party's motion to amend. *Borski v. Staten Island Rapid Transit*, 413 F. App'x 409, 411 (2d Cir. 2011) ("One good reason to deny leave to amend is when such leave would be futile.") (citing *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995)).

As to plaintiffs' first additional proposed claim, the Second Circuit has held that there is no private right of action against an official or employee of a municipal agency under the Privacy Act. *Pennyfeather*, 431 F.3d at 56. Accordingly, plaintiffs' proposed Privacy Act claim is demonstrably frivolous, especially considering that plaintiffs submitted the proposed amended complaint only after receiving defendants' motion for summary judgment that cited *Pennyfeather*. *Id.* The language in that case that denies the existence of a private cause of action for violations of the Privacy Act is in the very same paragraph as the language that declines to find a right to recovery under § 1983 for disclosing social security numbers. *Id.* In other words, when presented with a decision—only two pages long—that is directly fatal to one of their claims, plaintiffs responded by presenting another cause of action *denied by the same decision*. Plaintiffs' proposed additional cause of action thus would be futile.

Plaintiffs' proposed additional claim for § 405(c)(2)(C)(viii)(I) fares better, but not by enough. That statute does not expressly create a cause of action, but neither does it prohibit

---

[5] Section 405(c)(2)(C)(viii)(I) states that "[s]ocial security account numbers and related records that are obtained or maintained by authorized persons pursuant to any provision of law enacted on or after October 1, 1990, shall be confidential, and no authorized person shall disclose any such social security account number or related record."

11

one. 42 U.S.C. § 405(c)(2)(viii)(I). Accordingly, the analysis turns to Congress's intent in enacting the statute. *Cohen v. Viray*, 622 F.3d 188, 193 (2d Cir. 2010).

> Congressional intent is the keystone as to whether a federal private right of action exists for a federal statute. Without a showing of congressional intent, a cause of action does not exist and courts may not create one[.] [A] [c]ourt must begin its search for Congress's intent with the text and structure of the statute, and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided.

*Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007) (internal citations and quotation marks omitted).

There is no indication in the text or structure of § 405(c)(2)(C)(viii)(I) suggesting that there be a private cause of action for violations of its terms. On the contrary, § 405 in general is designed to limit the power of the Commissioner of Social Security's ability to "make rules and regulations and to establish procedures, . . . which are necessary or appropriate to carry out such provisions[.]" 42 U.S.C. § 405(c)(2)(C)(viii)(I). Plaintiffs cannot argue that a statute designed to establish limitations on a specific office vests in them a private right to sue police officers for the improper disclosure of their social security numbers. Creating that cause of action would grossly expand § 405(c)(2)(C)(viii)(I) beyond its intended purpose, and this Court will not make that expansion.

Additionally, the only court to have examined the question of whether to infer a private cause of action for § 405(c)(2)(C)(viii)(I) ruled not to do so. *See*, *Grams v. Esters*, 2008 WL 339509, at *1 (W.D. Ky. Feb. 6, 2008) (noting that claim under § 405(c)(2)(C)(viii)(I) had not survived motion to dismiss because there was no private cause of action). Accordingly, neither of plaintiffs' proposed new federal causes of action are claims for which relief could be granted. As such, plaintiffs' proposed amendment would be futile, and their motion to amend must be dismissed with prejudice.

12

D. **STATE LAW CLAIMS.**

This Court still maintains supplemental jurisdiction of plaintiffs' state claims under 28 U.S.C. § 1367(a). *See Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) ("[F]ederal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to form part of the same case or controversy under Article III of the United States Constitution." (internal quotation marks omitted)).

A district court may, however, "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . —judicial economy, convenience, fairness and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

For the reasons discussed above, plaintiffs' federal claims have all been dismissed. Especially considering that those federal claims should have been dismissed almost three years ago, fairness and comity point well away from allowing plaintiffs' state claims to proceed here. Accordingly, plaintiffs' state claims must be dismissed without prejudice.

E. **ATTORNEY'S FEES.**

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). However, § 1988 allows that "[i]n any action or proceeding to enforce a provision of [§§ 1981-86] of [title 42] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b).

"Fees are regularly awarded to prevailing plaintiffs who obtain some significant measure of relief . . . ." *Panetta v. Crowley*, 460 F.3d 388, 399 (2d Cir. 2006) (collecting cases). Conversely, "[t]he Second Circuit has instructed that it should be rare for a prevailing defendant in a § 1983 case to be awarded attorney's fees." *Robinson v. Town of Kent*, 2012 WL 3024766, at *8 (S.D.N.Y. July 24, 2012) (citing *Sista v. CDC Ixisi N. Am., Inc.*, 445 F.3d 161, 178 (2d Cir. 2006)). Awards of fees are rare because of "concern[s] about the potential chilling effect on [§] 1983 plaintiffs—who are the chosen instrument of Congress to vindicate a policy of the highest national priority . . . ." *Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994) (internal quotation marks omitted). However, the Supreme Court has also noted that "[i]n enacting § 1988, . . . Congress sought to 'protect defendants from burdensome litigation having no legal or factual basis.'" *Fox v. Vice*, 563 U.S. 826, 833 (2011) (citing *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 420 (1978)).

Accordingly, a court should only award attorney's fees to a § 1983 defendant if the plaintiff's claim "was frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so." *Rounseville*, 13 F.3d at 632 (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986)) (internal citations and quotation marks omitted). For these purposes, a claim is "frivolous where it lacks an arguable basis either in law or in fact." *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (internal citations and quotation marks omitted).

There is little dispute that plaintiffs' claims for malicious prosecution and false arrest have been frivolous for almost three years. Yet plaintiffs have maintained those claims despite having multiple opportunities to eliminate them, and despite their promises to do so. Plaintiffs were given a deadline to stipulate to dismissal, but they only submitted a proposed stipulation to defendants several weeks after that deadline had passed, and after Magistrate

Judge Baxter had ordered them to file a status report. Dkt. 19; 20. Moreover, their proposed stipulation was unclear and sought dismissal without prejudice for claims that without doubt should have been dismissed with prejudice. Dkt. 22-1, pp. 1-2.

Additionally, as discussed above, plaintiffs' invasion of privacy claim was foreclosed by the rulings of this Circuit at every stage of this action. *Cassano*, 436 F.3d at 75; *Pennyfeather*, 431 F.3d at 56. Of course, plaintiffs should not be discouraged from arguing for changes in the law where necessary or where they believe it just. But that was not plaintiffs' strategy. Rather than accept that the law was against them and appeal to this Court to change it, plaintiffs time and again delayed, distracted, and even attempted to manufacture transparently unavailable claims to force the complaint to remain in federal court years after it had any hope of victory.

Plaintiffs have thus, through broken promises and missed deadlines, managed to extend this case years longer than it needed to be in this district. Plaintiffs' anchoring federal claims have spent nearly their entire existence without hope of merit, and had plaintiffs acted appropriately, their complaint would have been years closer to an outcome on the merits of the state claims in state court.

It is therefore irrelevant that plaintiffs steered their deposition questions and discovery away from the false arrest and malicious prosecution claims, because their only other claim anchoring this Court's jurisdiction, the § 1983 claim for invasion of privacy and the nonexistent causes of action under § 405(c)(2)(C)(viii)(I) and the Privacy Act were every bit as patently defective as these other two. The entire discovery process was thus wasteful, and plaintiffs should justly bear the cost of that waste. Defendants' motion for attorneys' fees must thus be granted.

## V. CONCLUSION

After its first five months, plaintiffs' complaint has presented, as a matter of law, no viable federal claim. Yet plaintiffs walled off and bought time, until now, almost three years later, that complaint is finally dismissed. This delay continued well past any point of excuse. Plaintiffs are welcome to pursue their claims further in state court. But their pretense of a federal claim that confers jurisdiction upon this Court has ended.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED;

2. Plaintiffs' cross-motion to amend is DENIED;

3. Plaintiffs' claims for false arrest, malicious prosecution, and invasion of privacy under § 1983 are DISMISSED WITH PREJUDICE;

4. Plaintiffs' state claims are DISMISSED WITHOUT PREJUDICE;

5. Defendants' request for attorney's fees is GRANTED;

6. Defendants must submit to the Court an allocation of attorneys' fees by 12:00 p.m. on Monday, October 14, 2019; and

7. Plaintiffs may oppose defendants' allocation of fees by 12:00 p.m. on Monday, October 21, 2019.

The Clerk of Court is directed to enter judgment accordingly and close the file, pending the parties' submissions concerning the allocation of attorneys' fees.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated: September 30, 2019
Utica, New York.